UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 24-cr-386 |
| | : | |
| THOMASZ SZABO, | : | |
| a/k/a "Plank," "Jonah," and "Cypher" | : | |
| | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Thomasz Szabo, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

1. At all relevant times, the defendant resided in Romania and was an active internet user. For recreation, the defendant frequented online message boards and chat servers where he communicated with others about current events, video games, and other subjects. In these online communities, a central part of the culture was "trolling," that is, attempting to provoke a reaction from a person by engaging in communications and conduct intended to offend, upset, and anger that person. The defendant and others regarded trolling as a form of entertainment in which the goal was to cause as extreme a response as possible.

2. In approximately 2018, the defendant began creating, and recruiting others to join, his own chat servers in which trolling was a major theme. Seeking to attract and retain members, the defendant engaged in increasingly extreme forms of trolling, and he shared the results with those in his groups. By late 2020, the defendant's activities had expanded to include "swatting" —

1

T. S.
5.20.25

that is, falsely reporting an ongoing threat of violence at a victims' home address for the purpose of provoking a police response there — as well as false bomb threats.

3. The defendant's chat servers attracted numerous members. Most members were passive spectators who did not participate directly in the swatting and bomb threats. Some members, however, were active participants who partnered with the defendant to perpetrate the hoaxes. Sometimes, following the defendant's example, members would commit their own swatting and bomb threats and share the results with the group.

4. When the defendant partnered with others to make swatting or bomb-threat phone calls, his usual role was to "host" the call by using an internet-based phone platform to dial the number for a police department or other emergency response agency. Once the call was in progress, the defendant would use an audio-sharing application that allowed others in the chat group to speak and listen as if they were direct parties to the call. A designated member of the group would do the talking while others would listen and type suggestions for how to make the call more effective or entertaining. When he hosted calls, the defendant used services such as virtual private networks and proxy servers to conceal his identity.

5. When selecting victims, the defendant sought to target those he believed would react publicly to having been swatted. To that end, he targeted individuals with large social media presences, including "streamers" (people who play video games or perform other activities while broadcasting to online audiences) and politically vocal social media users. On at least one occasion, the defendant swatted a sitting Member of Congress who was active on social media.

6. The content of the swatting and bomb-threat calls varied. Often, the calls would include threats or false information concerning attempts to use explosives to kill and injure people and destroy buildings. The calls also often included threats to kill or injure third parties by other

T. S.
5.20.25

means, such as by shooting them. Sometimes, the defendant and other members of his group, intending to harass and intimidate a person, would target the same person repeatedly, in ways reasonably expected to cause substantial emotional distress to the person.

7. The defendant formed continuing associations with various members of his groups, who knew each other by their online monikers and who took part in swatting and bomb threats together on an ongoing basis. Among the defendant's associates were co-defendant Nemanja Radovanovic, whose primary moniker was "Thuggin," and an individual the defendant knew by the moniker "Angmar." The defendant's association with Radovanovic, "Angmar," and others constituted a conspiracy to violate 18 U.S.C. § 844(e) (threats and false information regarding explosives); 18 U.S.C. § 875(c) (transmitting threats in interstate and foreign commerce); and 18 U.S.C. § 2261A(2)(B) (cyberstalking).

8. While acting as leader of his chat servers, the defendant personally committed swatting, bomb threats, and other hoaxes including, but not limited to, the following:

   a. On approximately December 30, 2020, the defendant hosted a phone call to a crisis intervention hotline in which a co-conspirator conveyed threats to commit a mass shooting at multiple unspecified synagogues in New York City, as alleged in paragraph 3 of the Indictment.

   b. On approximately January 17, 2021, the defendant hosted a phone call to a crisis intervention hotline in which a co-conspirator conveyed threats to detonate explosives at the United States Capitol and kill the President-elect, as alleged in paragraph 4 of the Indictment.

   c. On approximately October 30, 2021, the defendant hosted a phone call to a government agency in the United States in which a co-conspirator conveyed a false report that explosives had been placed at Victim University 1, as alleged in paragraph 5 of the Indictment.

*T. J.*
*5.20.25*

  d. On approximately January 6, 2022, the defendant posted a message to a public internet forum in which he threatened to commit mass murder and detonate explosives at the U.S. Capitol, as alleged in paragraph 6 of the Indictment.

  e. On various occasions in 2022, the defendant participated in the swatting of Private Victim 1, Private Victim 2, and Private Victim 3, as alleged in paragraphs 7 through 9 of the Indictment.

9. By December of 2023, the defendant was no longer personally committing swatting and bomb threats, but he continued to direct and encourage his associates to engage in such conduct. From approximately December 12 through December 23, 2023, the defendant directed Radovanovic to perpetrate the swattings alleged at paragraphs 10 through 16 of Count One of the Indictment.

10. On approximately December 23, 2023, after directing Radovanovic to swat a politically vocal social media user, the defendant told co-conspirator Radovanovic that their swatting victims should include people on both ends of the American political spectrum, because "we are not on any side."

11. Beginning on approximately December 24, 2023, and continuing until approximately January 9, 2024, co-conspirators Radovanovic and "Angmar" perpetuated a series of swatting and bomb-threat calls, including those alleged at paragraphs 18 through 121 of the Indictment. The intended victims of those calls included, but were not limited to, the following public officials and family members of public officials:

  a. At least 25 Members of Congress or family members of Members of Congress;

  b. At least 6 then-current or former senior U.S. Executive Branch officials, including multiple cabinet-level officials;

4

T. J.
5.20.25

    c. At least 13 then-current or former senior federal law enforcement officials, including the heads of multiple federal law enforcement agencies;

    d. Multiple members of the federal judiciary;

    e. At least 27 then-current or former state government officials or family members of such officials;

    f. At least 4 religious institutions; and

    g. Multiple members of the media.

12. During the time when Radovanovic and "Angmar" were engaged in the conduct described in paragraph 11 above, the defendant remained in regular communication with Radovanovic about, among other things, swatting and bomb threats.

13. The following conduct is the basis for Count Two of the Indictment: On approximately December 24, 2023, during and in furtherance of the conspiracy described in paragraph 7 above, a member of the conspiracy placed a call to a police department in Oklahoma. Radovanovic, speaking on the call, falsely told the operator that he had placed "several pipe bombs" in a church. When asked which church, Radovanovic provided the name and address of Victim Religious Institution 1. When asked his name, Radovanvic provided the first name of Cyberstalking Victim 1, a person the defendant and his co-conspirators had previously subjected to a pattern of harassment. Afterward, Radovanovic sent the defendant a link to a news story about the bomb threat to Victim Religious Institution 1, which described the evacuation of the church during services. After sending the link, Radovanovic sent the defendant a message reading, "[Cyberstalking Victim 1] making bomb threats all the way in oklahoma" and "thoughts[?]." The defendant did not directly respond, but his next messages were to provide Radovanovic with the identity of another victim to be swatted.

T. S.
5-20-25

14. During the course of conduct summarized in this Statement of Offense:

    a. On numerous occasions, police departments and other entities deployed resources in response to hoax threats perpetuated by the defendant and his co-conspirators. These responses included the deployment of SWAT teams, the evacuation of premises, the closing of streets, and other unnecessary emergency measures, all of which resulted in a substantial disruption of public and governmental functions and services.

    b. The defendant and his co-conspirators directed their swatting and bomb threats against current and former government officers and employees, as well as family members of current and former government officers and employees, who were selected as victims because of such status.

    c. The defendant was a leader and organizer of at least four other participants who together engaged in an extensive pattern of swatting and bomb threats in violation of federal criminal law.

T. J.
5.20.25

## *Elements of the Offenses*

15. The parties agree that conspiracy, in violation of 18 U.S.C. § 371, requires that the defendant joined together with at least one other person to accomplish an unlawful purpose. The conspiracy alleged in this case, to which the defendant is pleading guilty, involved the three object offenses defined in paragraphs 16 through 18 below.

16. The parties agree that threats and false information involving explosives, in violation of 18 U.S.C. § 844(e), requires the following elements:

   a. The defendant made, or caused to be made, a threat to kill or injure any individual or unlawfully damage or destroy any building by means of fire or an explosive;

   b. The defendant used, or caused to be used, an instrument of commerce, such as a telephone, to communicate the threat; and

   c. The defendant acted knowingly and willfully.

   *or*

   a. The defendant conveyed false information about an attempt being made, or to be made, to kill or injure any individual or unlawfully damage or destroy any building;

   b. The defendant used, or caused to be used, an instrument of interstate or foreign commerce, such as a telephone, to communicate the false information; and

   c. The defendant acted maliciously, that is, with the intention to cause damage or injury or with deliberate disregard for the likelihood that damage or injury would result.

17. The parties agree that transmitting threats in interstate and foreign commerce, in violation of 18 U.S.C. § 875(c), requires the following elements:

   a. The defendant knowingly sent a message in interstate or foreign commerce containing a true threat to injure the person of another; and

   b. The defendant sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.

T. J.
5.20.25

7

A "true threat" is a serious threat — not idle talk, a careless remark, or something said jokingly — that is made under circumstances that would place a reasonable person in fear of another person being injured.

18.  The parties agree that cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B), requires the following elements:

   a. The defendant used an interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce, to engage in a course of conduct that would be reasonably expected to cause substantial emotional distress to a victim, the victim's immediate family member, or the victim's spouse or intimate partner; and

   b. The defendant did so with the intent to harass or intimidate the victim.

19.  With respect to the conspiracy charged in Count One of the Indictment, the defendant knowingly and voluntarily admits to all the elements as set forth above. With respect to the substantive offense charged in Count Two of the Indictment, the defendant knowingly and voluntarily admits to all the elements as set forth in paragraph 16 above.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY
D.C. Bar No. 481866

By: /s/ Conor Mulroe
Conor Mulroe
Assistant U.S. Attorney
NY Bar Number 5289640
United States Attorney's Office
601 D Street, NW, 5th Floor
Washington, D.C. 20530
(202) 740-4595
Conor.Mulroe@usdoj.gov

T. J.
5.20.25

8

## DEFENDANT'S ACKNOWLEDGMENT

I, Thomasz Szabo, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 5.20.2025

**Thomasz Szabo**
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 5·20·25

Nicholas Madiou, Esq.
Attorney for Defendant